IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER NELSON PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 7:17-cv-00007 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| WILLIAM WILSON, *et al.*, ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Christopher Nelson Payne, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights while incarcerated at both the Rappahannock Shenandoah Warren Regional Jail (RSW) and Northwestern Regional Adult Detention Center (NRADC). In his verified amended complaint and affidavit, Payne alleges generally that RSW Director of Nursing and Registered Nurse Holt, RSW Superintendent Wilson, NRADC Director of Nursing Miller, and NRADC Superintendent Whitley denied him proper medical care for treatment of his HIV/AIDS, causing him pain and constant infections because he was not given medications needed to survive. (Dkt. Nos. 13, 54.) He alleges that at times he was not given all of his medications and that his Ensure (a nutritional supplement) was discontinued, causing him to have an empty stomach thus preventing him from taking medications that he was given. (*Id.*) The only specific allegations include the naming of defendants Nurse Holt and Superintendent Wilson with regard to denial of medical care on November 22, 2016, and February 4, 2017 (Dkt. No. 13), and references to Nurse Miller holding pills when Payne arrived at NRADC and stopping his prescription for Ensure (Dkt. No. 54). Other than these allegations, Payne notes in his affidavit that he relies upon his medical records.

(Dkt. No. 54.) Defendants collectively filed a motion for summary judgment, with accompanying affidavits and medical records, arguing that Payne fails to establish deliberate indifference or any affirmative link between defendants' actions and Payne's claimed deprivation, that they lack personal involvement, and that they are protected by qualified immunity. (Dkt. No. 30.) Payne responded, making this matter ripe for disposition.[1] Upon review of the record, the court will grant defendants' motion for summary judgment.

## I. BACKGROUND

Beginning on November 22, 2016, Payne alleges that he suffered from pain and constant infections "due to [RSW] medical staff [] not giv[ing him] HIV medication that is needed to survive." (Dkt. No. 13.) He does not indicate which medications he was denied as of November 22, 2016. While housed at RSW for approximately two months, Payne was seen by the RSW physician's assistant at least eight times and was prescribed Prezista and Laivudine to treat his HIV infection. Nurse Holt assisted in scheduling Payne to see an infectious disease specialist, and Payne was evaluated at the University of Virginia (UVA) Infectious Disease clinic on December 19, 2016, where his HIV medications continued to be prescribed. Payne, however, refused to take his HIV medication and suffered from infections requiring additional treatment on several occasions at Warren Memorial Hospital. On January 6, 2017, Payne went to Warren Memorial for incision and drainage of an infected abscess on his upper right arm, and Nurse Holt received Payne after his treatment.

Nurse Holt did not provide any direct clinical care to Payne other than when he returned from Warren Memorial Hospital. At that time, she reviewed the report from the hospital,

---

[1] Payne filed a "Notice," which the court construes as a motion for injunctive relief, asking the court to order the NRADC medical staff to follow University of Virginia (UVA) doctors' medical recommendations and cease neglect of Payne as a patient. (Notice, Dkt. No. 34.) During the pendency of this motion, however, Payne was transferred from NRADC to Dillwyn Correctional Center, and the court will deny the motion as moot.

examined Payne's dressing, and provided post-treatment instructions. She also made efforts to speak with Payne's attorney to notify him of Payne's refusal of both medication and mental health services. She notes that the records show that Payne was given his prescribed HIV medication, but he refused to take it. (Holt Aff. at 2-9, Dkt. No. 31, Ex. C.)

On January 18, 2017, Payne was transferred from RSW to NRADC, at which time NRADC Director of Nursing Miller completed a medical screening of him. On intake that day, Payne was diagnosed with a seizure disorder, HIV, Hepatitis A, B and C, and candidiasis abscess on his right inner arm, and he was placed on several medications, including antiviral medications Norvir and Zidovudine for treatment of his HIV infection. Payne saw that Nurse Miller properly noted at intake all the medications he was previously taking at RSW. However, on January 19, Payne states that he was "only given 2 of 6 pills relating to HIV" and that the other pills were "on hold" by Nurse Miller. Payne requested to speak to the nurse because the nurse at UVA Medical, where he had been admitted previously on different occasions, told him that he should either take the dose as directed or not take the pills at all "because each one works with the other 7." (Payne Aff. At 1, Dkt. No. 54.) As a result, Payne did not take the medications because he believed they were dispensed to him improperly. That same day, physician's assistant Robert Dryden, who is not named as a defendant, examined Payne to address his medication questions.[2] Payne told Dryden that he could not take his HIV medication because of reflux, so Dryden prescribed medicine to alleviate the problem. Despite this prescription, Payne continued to refuse both his reflux and HIV medicine the vast majority of the time. The medication

---

[2] Payne states that Dr. Dalberg saw him on January 20, 2017, discontinued his medicine because it was not clear who was monitoring Payne and "the medications [were] not correct as shown in his chart notes," and that he was later transported to UVA Medical where a nurse changed his medications to only three prescriptions. (Payne Aff. at 1, Dkt. No. 54.) It appears that Payne may be confusing this with a later date that he saw Dr. Dalberg, but it makes no difference to the outcome of the case. Payne saw either Dryden, the physician's assistant, or Dr. Dalberg the day after his medications were "on hold."

administration record notes Payne's history of noncompliance with medical orders and refusal of medication. (Miller Aff. ¶¶ 2–3, Dkt. No. 31, Ex. A.)

On January 24, 2017, Payne complained of severe pain and swelling in his throat and was admitted to the Winchester Memorial Hospital Emergency Room. Payne states that he was admitted because the infections were caused by going seven days without medication. Although he was admitted for odynophagia and candidal esophagitis, the CT scan and other tests did not support a diagnosis of candidiasis. (Dkt. No. 31–1 at 156.) While in the hospital, the infectious disease specialist refused to consult with the hospitalist regarding Payne because of Payne's prior history of noncompliance with medical orders. Even though Payne could eat a soft diet, he continued to refuse to take his HIV medication at the hospital. When the attending physician discontinued intravenous narcotic pain medications, Payne refused further treatment and left the hospital against medical advice. (Miller Aff. ¶¶ 4–5, Dkt. No. 31, Ex. A.)

After returning to NRADC from Winchester Memorial, Payne states he was unable to take his medications because they were to be liquid only and only two of his three medications could be found, so he could not take them. Payne alleges he was "sent back to UVA" where his prescription was changed, but he does not specify any admission or discharge dates. According to Nurse Miller, Payne again refused to take his HIV medication upon his return from the hospital, despite being offered supplementary reflux medicines. (Miller Aff. ¶¶ 4–5, Dkt. No. 31, Ex. A.)

On February 7, 2017, Payne was treated at the prison by Dr. Dalberg (not a defendant), who reviewed Payne's medical records and ordered that he be seen by an infectious disease specialist. The appointment was scheduled for March 2017 at UVA Hospital and, given the pending appointment and Payne's history of refusing prescribed HIV medicine, Dr. Dalberg

4

discontinued the previously ordered HIV medicine. (Med. Admin. Rec. at 44, Dkt. No. 31, Ex. A.) Payne states that Dr. Dalberg saw him on January 20, 2017, discontinued his medicine because it was not clear who was monitoring Payne and "the medications [were] not correct as shown in his chart notes," and that he was later transported to UVA Medical where a nurse changed his medications to only three prescriptions. (Payne Aff. at 1, Dkt. No. 54.) Regardless of the actual date, it appears that Payne was seen by Dr. Dalberg who discontinued his HIV medication for a brief time pending his appointment at UVA Medical.

On February 10, 2017, Payne received a prison medical order to have one can of Ensure daily until February 19, 2017, so that Payne would not need to take his other medications on an empty stomach. (Miller Aff. at 44, Dkt. No. 31-1.) Payne believes this was a UVA Medical order, but he had not yet been to his appointment at UVA Medical. He states that Nurse Miller "stopped the [E]nsure against the UVA orders." (Payne Aff. at 2, Dkt. No. 54.) The medication administration records show that the order was limited in time and that Payne received Ensure daily from February 10, 2017, through February 20, 2017, as ordered. (Med. Admin. Rec. at 44, Dkt. No. 31, Ex. A.)

## II. DISCUSSION

**A. Summary Judgment Standard**

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-

movant. *Id.* The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Id.* at 322–24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."[3] *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio. Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## B. Denial of Medical Care

Payne alleges that defendants violated his Eighth Amendment rights by denying him medical care when he did not receive his HIV medication according to medical orders. Defendants argue Payne fails to establish that they were deliberately indifferent to Payne's receiving his HIV medicine or that there is any affirmative link between their actions and Payne's alleged deprivation. Defendants further argue they were not personally involved with any denial of medical care to Payne as they hold administrative and supervisory roles.[4]

---

[3] In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Further, as a general rule, the nonmoving party must respond to a motion for summary judgment with affidavits, or other verified evidence. *Celotex*, 477 U.S. at 324; *see also Williams*, 952 F.2d at 823. An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, a party cannot ward off summary judgment with an affidavit or verified complaint "based on rumor or conjecture." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *see also Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (summary judgment may be appropriate in cases where the allegations in the verified pleading are merely conclusory). Here, Payne has filed a verified complaint, and his affidavit in response to defendants' motion for summary judgment is in proper form. Thus, the court considers the factual allegations set forth in Payne's complaint and affidavit as evidence.

[4] Defendants also argue that they are entitled to qualified immunity, but, given the court's ruling, it need not address that defense.

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must present evidence sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard and, thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105–06; *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Turner v. Kight*, 121 F. App'x 9, 13–14 (4th Cir. 2005) (plaintiff must show the delay, itself, caused substantial harm). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, 2011 U.S. Dist. LEXIS 88124, at *6 (E.D. Va. 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

7

**1. RSW Superintendent Wilson and NRADC Superintendent Whitley**

RSW Superintendent Wilson and NRADC Superintendent Whitley are entitled to summary judgment because Payne fails to establish their personal involvement as to his deliberate indifference claim. In order to survive summary judgment for a claim under § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations and quotation marks omitted). Prison officials without personal involvement "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Id.*

Even drawing all inferences in the light most favorable to Payne, Payne fails to provide facts with which he could persuade a jury that Superintendent Wilson or Superintendent Whitley acted with deliberate indifference to Payne's serious medical needs. Payne names these officials as defendants in his amended complaint, but he fails to connect either of them to specific facts. Moreover, in his later filed affidavit, Payne fails to set forth any specific facts that either defendant acted with deliberate indifference and, in fact, does not mention them at all. Because Payne fails to present facts that show Superintendent Wilson or Superintendent Whitley had any personal involvement with his medical care, the court will summarily dismiss Payne's claims against these defendants.

**2. RSW Nurse Holt and NRADC Nurse Miller**

RSW Nurse Holt and NRADC Nurse Miller are entitled to summary judgment because Payne fails to establish that they acted with deliberate indifference. As to Nurse Holt, as

previously mentioned, she provided no direct clinical care to Payne other than receiving Payne upon his return from Warren Memorial Hospital. Accordingly, the record could not lead a rational trier of fact to conclude that Nurse Holt was deliberately indifferent to Payne's medical needs. Therefore, the court will grant summary judgment for Nurse Holt.

As to Nurse Miller, even assuming that she put some of Payne's medication "on hold" the day after his intake to NRADC, Payne was treated by either Dryden, the physician's assistant, or Dr. Dalberg the very next day when Payne was examined and any necessary changes to his medication regimen were made. On this basis, Payne cannot establish he was denied medical care by Nurse Miller because he fails to establish that any one day delay in receiving his "on hold" medications caused him substantial harm. As to Payne's additional claim against Nurse Miller that she stopped his Ensure prescription against medical orders, the record shows that Payne received his Ensure prescription every day during the discrete period it was prescribed.[5] Any failure of Miller's to provide Ensure after that prescription period would not constitute interference with Payne's treatment. Accordingly, Payne cannot establish that Nurse Miller was deliberately indifferent to his need for Ensure. Nor can Payne establish that there exists any affirmative link between Nurse Miller and Payne's not receiving Ensure after the prescribed treatment period concluded. As such, the court will also grant summary judgment for Nurse Miller.

III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion for summary judgment on all claims.

---

[5] It is unclear whether Payne asserts that he did not receive Ensure during the prescribed time or after the prescribed time. If he contends that he did not receive Ensure during the prescribed time, he fails to establish that any substantial harm resulted from his lack of receiving Ensure.

An appropriate order will be entered this day.

Entered: March 28, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge